UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:11-cr-00177 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>Judge John R. Adams</u> |
| | ) | |
| GABRIEL LLANEZ-GARCIA | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | (Resolves Doc. 14) |

This matter appears before the Court on a Motion to Suppress filed by Defendant, Gabriel Llanez-Garcia. Doc. 14. Plaintiff, United States of America, timely responded to the motion and subsequently filed a supplemental response. On July 14, 2011, the Court held an evidentiary hearing on the matter. Upon review of the relevant filings, the hearing, and the applicable law, Llanez-Garcia's Motion to Suppress is DENIED.

### I.  Facts

On April 6, 2011, Ohio State Highway Patrol Office Neil Laughlin was on duty near milepost 135 of the Ohio Turnpike. Trooper Laughlin observed a maroon 1993 Nissan Pathfinder headed eastbound. According to Trooper Laughlin, he observed the vehicle swerve several times into the left lane. He also noted that the vehicle was traveling at a speed well below the posted speed limit. As a result, Trooper Laughlin instituted a traffic stop. Trooper Laughlin indicated that none of the four occupants of the vehicle could produce a valid driver's license. At least one of the occupants presented a Mexican ID. He stated that there was a language barrier between himself and the occupants and therefore, he advised dispatch and the U.S. Border Patrol was contacted because they had officers who were fluent in Spanish. Upon arrival, Border Patrol

agents began interacting with the vehicle's occupants and eventually determined that there was a crime being committed. The Border Patrol Agents took the men into custody. It was determined that all four men were Mexican citizens and illegally present in the United States. Llanez-Garcia was arrested on suspicion of alien smuggling, in violation of 8 U.S.C. 1324. He was indicted on April 26, 2011. Llanez-Garcia pled not guilty. On June 1, 2011, he filed the instant motion to suppress. The Government timely responded. On July 14, 2011, the Court held a hearing on the matter. The Government presented the testimony of Trooper Laughlin. The Court now resolves Llanez-Garcia's motion.

## II. Analysis

Initially, Llanez-Garcia contends that the traffic stop of the Nissan Pathfinder was made in violation of the Fourth Amendment. Llanez-Garcia points to *Terry v. Ohio*, 392 U.S. 1 (1968) for the proposition that the reasonableness of the stop is ascertained by determining first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19-20. Initially, Llanez-Garcia contends that Trooper Laughlin stop of the Pathfinder was not justified at its inception.

Trooper Laughlin testified that he was on duty on April 6, 2011. He stated that he was pursuing a vehicle on which he intended to initiate a traffic stop. While pursing this original vehicle, he noticed the Nissan Pathfinder. He explained that the Pathfinder was traveling in the center lane and he noticed it swerve into the left lane. He then slowed his speed to observe the Pathfinder. He observed it swerve into the left lane approximately four times. He further explained that the Pathfinder was traveling a speed a great deal slower than the rest of the traffic at the time. He testified that he viewed the Pathfinder's swerving as a danger. He further testified

that, on the Turnpike, the speeds are faster than the local routes. "A vehicle traveling well below the speed limit in and of itself poses a hazard for other traffic especially when it's drifting outside of its lane and into the left or the –also known as the fas t lane." He verified that this was a "marked lanes violation" pursuant to Ohio Revised Code section 4511.33. It was then that he initiated a traffic stop on the Pathfinder.

As stated on the record at the hearing on this motion, the Court concludes that through Trooper Laughlin's testimony it was clear that there was probable cause and the stop itself was valid. The Court noted that it concluded that Trooper Laughlin's testimony was credible and complete on this issue. Trooper Laughlin's testimony followed logically, explained the exact reason for the stop, which was then confirmed by his dashboard camera video, which was presented at the hearing.

Next, Llanez-Garcia contends that the detention of the occupants of the Pathfinder was not reasonably related to the stop and that the detention of the Pathfinder and its occupants for at least 30 minutes after the initial stop was unreasonable. He further contends that he was detained for an impermissible purpose. This argument is without merit. Trooper Laughlin testified that he determined that none of the Pathfinder's occupants possessed a valid driver's license, and therefore he could not release any of them to drive the Pathfinder away. Because no one had a valid license, the Pathfinder had to be towed.

Trooper Laughlin testified that while attempting to communicate with the occupants, he became concerned that something was wrong. He learned that the occupant did not know each other, and they were acting very "fidgety" and nervous. Because the Pathfinder had Oklahoma temporary tags, Trooper Laughlin knew that the occupants had traveled across the country with one another. He testified that the fact that the occupants indicated that they did not know each

other presented a problem and caused him to be suspicious.   He further testified that he feared for his safety and therefore called other troopers for backup.

When backup arrived, he placed the vehicle occupants in the trooper's vehicle and commenced an inventory on the Pathfinder while awaiting a tow truck.   During this time, Border Patrol arrived and after conducting some interviews with the occupants the agents informed Trooper Laughlin that there was a crime being committed, and that at that time they were going to pursue an investigation.

At the hearing, Llanez-Garcia asserted that the Border Patrol did not in fact serve in any interpretive fashion.   It appears that his contention is that Trooper Laughlin's testimony that he called Border Patrol to help him communicate with the vehicle occupants because he was not fluent in Spanish is false and that he was simply holding the occupants because he believed they were illegal immigrants.   Llanez-Garcia supports this contention by noting that the video of the stop does not reflect that Trooper Laughlin was standing together with Border Patrol and speaking to the occupants.   Llanez-Garcia further points out that the only time the video shows Border Patrol talking to the occupants is when they were removing them from the car.   The Court finds this argument to be without merit.

Trooper Laughlin testified to communication problems between himself and the occupants of the vehicle and therefore called Border Patrol for help with translation.[1]   He stated that he only spoke enough Spanish to insure his own safety and therefore needed to call for translation help. He indicated that there were no Spanish speaking troopers working in his vicinity at the time of the stop.   The nearest Border Patrol station was approximately a half hour away.   He stated that he

---

[1] The Court notes that it appointed Llanez-Garcia with an interpreter for these proceedings.   This is demonstrative of the fact that Llanez-Garcia is not fluent in English.

could "somewhat" communicate to determine things such as license and registration. Even if the Court were to agree with Llanez-Garcia's argument that it was not necessary for Trooper Laughlin to call Border Patrol, the argument would not support a conclusion that the duration of the stop was impermissible. Trooper Laughlin testified that none of the occupants had a valid driver's license. As such, even without a call to Border Patrol, Officer Laughlin would have been forced to extend the stop in order to facilitate the removal of the all of the occupants from the turnpike. Therefore, the Court declines to conclude that Officer Laughlin manufactured a reason to extend the stop. Instead, the evidence supports his testimony that the call to Border Patrol was generated through communication problems with the occupants.

Because Trooper Laughlin could not allow the occupants to leave the scene without a valid drivers' license and because he could not effectively communicate with them, Trooper Laughlin's actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19-20. The Court concludes that Llanez-Garcia was not detained for an impermissible purpose or was detained longer than necessary to effectuate the purpose of the stop. Llanez-Garcia's motion to suppress is overruled.

### III.     Conclusion

For the reasons set forth herein, Llanez-Garcia's Motion to Suppress is DENIED.

IT IS SO ORDERED.

August 11, 2011                                     */s/ John R. Adams*
Date                                                          Judge John R. Adams
                                                                   United States District Court