UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:11-cr-00177 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| GABRIEL LLANEZ-GARCIA | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | (Resolves Doc. 15) |

This matter appears before the Court on a Motion to Dismiss the Indictment filed by Defendant, Gabriel Llanez-Garcia.  Doc. 15.  Plaintiff, United States of America, timely responded to the motion and subsequently filed a supplemental response.  On July 14, 2011, the Court held an evidentiary hearing on the matter.  Upon review of the relevant filings, the hearing, and the applicable law, Llanez-Garcia's Motion to Suppress is DENIED.

**I.    Facts**

On April 6, 2011, Ohio State Highway Patrol Office Neil Laughlin was on duty near milepost 135 of the Ohio Turnpike.  He made a traffic stop on a maroon 1993 Nissan Pathfinder headed eastbound.  The four occupants of the vehicle could not produce ID, although at least one presented a Mexican ID.  Due to the language barrier between Trooper Laughlin and the occupants, Trooper Laughlin contacted the U.S. Border Patrol because they had officers who were fluent in Spanish.  Upon arrival, Border Patrol agents began interacting with the vehicle's occupants and eventually determined that there was a crime being committed.  The Border Patrol Agents took the men into custody.  It was determined that all four men were Mexican citizens and illegally present in the United States.  Llanez-Garcia was arrested on suspicion of alien

smuggling, in violation of 8 U.S.C. 1324.  The complaint was signed on April 8, 2011 and an initial appearance was held before Magistrate Judge White on that same day.  On April 15, 2011, Llanez-Garcia appeared before the magistrate and was ordered detained.  The indictment was filed on April 26, 2011.  On May 9, 2011, Llanez-Garcia pled not guilty.  On June 1, 2011, Llanez-Garcia filed the instant motion to dismiss.  On July 14, 2011, the Court held a hearing on the matter.  The Court now resolves Llanez-Garcia's motion.

II.     **Analysis**

Llanez-Garcia moves to dismiss on the ground that the Bureau of Immigration and Customs Enforcement violated his Sixth Amendment right to compulsory process by deporting or otherwise removing the other occupants of the vehicle, alleged material witnesses, prior to Llanez-Garcia having an opportunity to interview or gain favorable testimony from them.

Llanez-Garcia notes that he was arrested on April 6, 2011 and at some point prior to April 26, 2011, when the indictment was filed, the other occupants of the vehicle were deported to Mexico.  The parties agree that the applicable law at issue is set forth in *United States v. Damra*, 621 F.3d 474.  In challenging the removal of a witness as a violation of the Sixth Amendment, Llanez-Garcia is required to "first make an initial showing that the government has acted in bad faith, and, having made that showing, must then make some plausible showing that the testimony of the deported witness would have been both material and favorable to his defense."  *Id.* at 490.

While Llanez-Garcia asserts generally that the removal of three material witnesses prior to his access to those individuals was done in bad faith, he does not explain in his motion *how* or *why* the removal was bad faith.  He instead focuses his argument on showing that the missing testimony could have been material and favorable to his defense.  This prong of the *Damra* test, however, is unnecessary absent a showing of bad faith.  See *id.*  It was not until the hearing that

Llanez-Garcia pointed to *U.S. v. Ramirez-Cubillas*, 223 F.Supp. 2d 1049 (D.Neb., 2002) for the proposition that he could prove bad faith by showing that the Government failed to follow the proper procedure with the deportations. Indeed, *Ramirez-Cubillas* explains that

> The defendant can prove bad faith by either showing that the Government departed from normal deportation procedures or that it deported the aliens to gain an unfair tactical advantage over the defendant at trial. The proper focus is 'on the Government's knowledge when, exercising its *1058 deportation authority, it arranged for the departure of the witnesses, not on any of its subsequent conduct. Id. (Internal citations and quotations omitted.)

The Government notes in its response that at the time of Llanez-Garcia's initial appearance, the witnesses were available, but the defense did not request to interview these individuals or request that they be made available. The Government explained that "[t]he arrangement with the Mexican embassy is that unless there is a reason to keep them, illegal Mexican aliens who do not, or cannot, fight deportation are deported as soon as practicable, to avoid them spending any more time than necessary in detention awaiting deportation." The Government further explained that it is standard practice that deportation flights for illegal Mexican nationals occur every Tuesday. The first Tuesday following the stop was April 12, 2011. The two other passengers of the vehicle had prior deportation order in their records and therefore were deported on this flight. The driver of the vehicle did not have prior deportation orders on his record; therefore, he was deported on the April 19, 2011 flight.

The Court notes that the record includes a letter from defense counsel to the Government's counsel that was faxed on April 15, 2011, indicating an objection to the release/discharge/deportation of the other occupants of the vehicle. The Government, however, in its response and at the hearing on the matter indicated that it was unaware of the letter.

At the hearing, Llanez-Garcia asserted that the Government did not follow proper procedure because they should have detained at least two material witnesses. The Government again outlined the procedure stated above and further added that even had it received the letter of April 15, 2011, the letter did not request an interview for give any grounds for holding the occupants. The Government stated that there was no follow up to the letter and the issue was not raised until 52 days after entering the case. The Government explained that the cost per day per alien would have been $100, and to keep all three aliens here until the hearing date would have been over $1600 in expense. Due in part to the cost, it is standard procedure to immediately deport an illegal alien absent a specific request justified by a reason for detention. Because, as the Government stated at the hearing, "we were given no reason by the defense and we had no reason so we couldn't hold them." Llanez-Garcia has offered as rebuttal cases in which the Government did not immediately deport the aliens. This, however, does not show that the Government's statements here regarding the proper procedures are incorrect. Rather it shows that the Government may have deviated from the proper procedures in the past. Accordingly, the Court concludes that Llanez-Garcia has failed to show that the Government acted in bad faith in deporting the vehicle occupants. Llanez-Garcia's Motion to Dismiss is DENIED.

### III. Conclusion

For the reasons set forth herein, Llanez-Garcia's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

August 11, 2011                                            /s/ John R. Adams
Date                                                         Judge John R. Adams
                                                                 United States District Court