UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:11-cr-00177 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| GABRIEL LLANEZ-GARCIA | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | (Resolves Doc. 16) |

This matter appears before the Court on a motion to quash, motion for a protective order and motion for sanctions filed by the Government. Doc. 16.

The relevant facts are as follows. On April 6, 2011, Ohio State Highway Patrol Office Neil Laughlin was on duty near milepost 135 of the Ohio Turnpike. Trooper Laughlin observed a maroon 1993 Nissan Pathfinder headed eastbound. According to Trooper Laughlin, he observed the vehicle swerve several times into the left lane. He also noted that the vehicle was traveling at a speed well below the posted speed limit. As a result, Trooper Laughlin instituted a traffic stop. Trooper Laughlin indicated that none of the four occupants of the vehicle could produce a valid driver's license. At least one of the occupants presented a Mexican ID. He stated that there was a language barrier between himself and the occupants and therefore, he advised dispatch and the U.S. Border Patrol was contacted because they had officers who were fluent in Spanish. Upon arrival, Border Patrol agents began interacting with the vehicle's occupants and eventually determined that there was a crime being committed. The Border Patrol Agents took the men into custody. It was determined that all four men were Mexican citizens and illegally present in the

1

United States. Llanez-Garcia was arrested on suspicion of alien smuggling, in violation of 8 U.S.C. 1324. He was indicted on April 26, 2011. On April 27, Llanez-Garcia filed with the Court his notice of discovery request. Doc. 11. The arraignment was set for May 4, 2011. However, on May 4, 2011, a hearing was held at which the defendant was not present. At that hearing, current defense counsel was present, along with the Assistant United States Attorney. The arraignment was continued to May 9, 2011. On May 9, 2011, Llanez-Garcia pled not guilty to the charges in the indictment.

On June 2, 2011, the Government filed the instant motion seeking to quash Defendant's subpoena served upon the United States Border Patrol. On June 7, 2011, Llanez-Garcia responded. On June 14, two subpoenas were returned executed as to Llanez-Garcia. One was served upon Lt. Morgan of the Ohio State Patrol (Doc. 23), and one upon Core Bammer, U.S. Border Patrol (Doc. 24). On July 8, 2011, the Government filed a supplemental brief in support of its motion. Doc. 28. On July 12, 2011, Llanez-Garcia responded to this supplement. Doc. 29.

The subpoenas at issue[1], Doc. 24 and 25 were addressed to the Custodian of Records and was served via fax on May 26, 2011. The Border Patrol Subpoena was to the attention of Cory Bammer. The Ohio State Highway Patrol subpoena was to the attention of Lt. Morgan. The subpoenas commanded Bammer and Morgan to appear at the United States Courthouse on June 3, 2011 at 9:00 a.m. and to bring with them the following documents or electronically stored

---

[1] The Court recognizes that Defense Counsel also served a subpoena on the Ohio State Highway Patrol. Although this subpoena was not mentioned in the initial motion to quash, the Government mentioned it in its supplement. Both subpoenas contained the same information and the same defects. As such, they will be jointly referred to as the subpoenas.

2

information or objects:

> Any and all audio/visual recordings and/or other documentation relating to the vehicle stop and subsequent encounter with vehicle occupants (at Ohio Turnpike marker 137, near Amherst, Ohio) on April 6, 2011, involving Maroon Pathfinder bearing Oklahoma temporary license plate UD9780.  This includes but is not limited to any and all dispatch tapes, radio communications, unit to unit communications and dash cam recordings.  In lieu of personal appearance, call Investigator Herman Ramos of Attorney Vanessa Malone at 216-522-4856 for delivery instructions.

On July 14, the Court held a hearing on these motions.  After review of the record and with consideration of the hearing on this issue, the Court hereby DISMISSES the Government's motion to quash as moot.  The Government's motion for a protective order is DENIED.  The Government's motion for sanctions has been withdrawn.  The Court concludes, however, that the issue of sanctions is ripe before it and will therefore hold a hearing on the issue.

**I.      The Motion to Quash is Moot**

The Government initially filed the motion to quash claiming that Defense Counsel was seeking to obtain the names of the other occupants of the vehicle but that he was not entitled to the information.  The Governments lists the following reasons why Defendant was not entitled to the information: "there was no need because 1) the aliens gave no exculpatory or mitigatory information, 2) the aliens being smuggled had been deported and would not be witnesses in the case, and 3) the aliens could be subject to retaliation by the smuggling organization and the government had a duty to withhold their identifiers under the victim/witness protection act."

The Government contends that, despite informing Defense Counsel that it would not disclose this information, "without notice to government counsel, defense counsel filed the instant subpoena misrepresenting to the Border Patrol that there was an evidentiary hearing set by this

3

Court for June 3, 2011, at 9:00 a.m." Doc. 16. As noted by the Government, there was no such hearing set on this Court's docket. The Government states that "[t]hese motions are filed because of substantial issues concerning the abuse of the subpoena process, usurping judicial authority and misrepresenting the Court's setting of hearings in cases before it, and discovery issues relating to the protection of non-witnesses who could be subject to retaliation and whose identifiers are neither necessary nor helpful to the preparation of a defense." Doc. 16.

The Government contends that the subpoena at issue was a veiled attempt to circumvent Fed.R.Civ.P. 16 and to obtain discovery in violation of Fed.R.Civ.P. 17. Notably, the subpoena appears to require testimony and the production of items at a non-existent hearing. The Court will further discuss its considerable concern with this process below, but notes here that it appears that the Government does not actually challenge the information sought in the subpoena.

The Government stated that it "views any request for documents and electronic media stored information concerning the case as legitimate, although the mechanism of a subpoena for a non-existent hearing we view as unethical, unprofessional, and illegitimate." Despite the Government's arguments to the contrary, the subpoenas do not specifically ask for the names or other identifiers of the occupants of the vehicle. This is, perhaps, because by all accounts, the Government had already released the names to Defendant's Counsel.[2] The Court reads the Governments statement that it challenges the mechanism of the subpoenas as something that is more relevant for its request for sanctions and/or a protective order. In response, the Undersigned has specifically issued a Standing Order setting forth his directive with regard to future Rule 17(c)

---

[2] There was some discussion as to whether this information was intentionally released. The discussion, nonetheless, does not negate the fact that everyone was aware that the names were released and therefore it is clear that the subpoena was not seeking this duplicative information.

4

subpoenas so that further misuse of the subpoena power will not occur. [3] What remains is a request for documents and other electronic media regarding the stop. The Government indicates that this is legitimate and the Court agrees. Defense Counsel further argued at the hearing that she had received the items sought in the subpoenas from other sources. As such, there is nothing remaining to quash. Accordingly, the motion to quash is moot.[4]

**II.     Sanctions**

In its initial motion, the Government argued for "whatever sanctions the Court deems appropriate." Doc. 16. In its Supplemental Brief in Support of Motion to Quash, however, the Government stated that "It is not, however, seeking or recommending sanctions." Doc. 28. Further, at the hearing on the motions, the Government stated that as a matter of Department of Justice policy, it was withdrawing its request for sanctions. Assistant United States Attorney Arturo Hernandez stated to the Court that according to policy, there must be supervisory approval when seeking sanctions.

As a supervisor in this case, AUSA Hernandez reviewed the docket and explained to the Court that "I do not view what was done as something in which Ms. Migdal—or at least my interpretation is not something where Ms. Migdal was trying to circumvent the Court's authority. I think she misapplied the rule and misinterprets the rule, but I don't believe that she was trying to get information in a misleading type of way. The reason I say that is because I am aware of other individuals with whom I've spoken…who have interpreted the rule the way that Ms. Migdal

---

[3] To view the Undersigned's Standing Order please visit: http://www.ohnd.uscourts.gov/home/judges/judge-john-r-adams/
[4] To the extent that the Government argues that the issue is not moot because it is concerned that this issue is capable of repetition the Undersigned has fully set forth his directive on this issue. See FN2.

interpreted."   As such, the Government is no longer seeking sanctions, but is seeking a protective order so that if the defense were to issue subpoena's pursuant to Rule 17(c), "that they do it in the appropriate manner."

Despite the fact that the Government has withdrawn its request for sanctions, this Court concludes that pursuant to its inherent authority and 28 USC § 1927, the issue remains ripe for review.  It has been explained that "[t]he Court may require an attorney to 'satisfy personally the excess costs, expenses, and attorneys' fees' reasonably incurred as a result of multiplying the proceedings in a case 'unreasonably and vexatiously.'  See 28 U.S.C. § 1927.  Moreover, it is well settled that courts have inherent authority to impose sanctions on an attorney for reckless or bad faith conduct during the course of litigation."   *U.S. v. Wheeler*, 154 F.Supp. 2d 1075 (Aug. 15, 2011), citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 [] (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 [] (1980); *United States v. Wallace,* 964 F.2d 1214. 1217-18 (D.C.Cir. 1992).

In light of the Government's withdrawal of its sanctions argument the Court will hold a hearing on the issue of sanctions to allow Defense Counsel the opportunity to respond to the actions that the *Court* finds sanctionable, as further outlined below.

At issue is the interpretation of Fed.R.Crim.P. 17.  Defense counsel explained that it was attempting to issue a subpoena duces tecum pursuant to Fed.R.Crim.P. 17(c).  The Government contends that because the subpoena contained a hearing date it was an inappropriate attempt to utilize Fed.R.Crim.P. 17(a).  The relevant portions of Fed.R.Crim.P 17 are as follows:

> (a) **Content.** A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and

6

> place the subpoena specifies. The clerk must issue a blank subpoena--signed and sealed--to the party requesting it, and that party must fill in the blanks before the subpoena is served.
> (b) **Defendant Unable to Pay.** Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.
> (c) **Producing Documents and Objects.**
>> (1) **In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

A. *Discovery and Subpoenas*

The Court feels compelled to first reiterate the plethora of case law that explain that a Rule 17(c) subpoena is not to be used as a discovery tool.  The United States Supreme Court has "recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials."  *U.S. v. Nixon*, 418 U.S. 683, 698-99, citing *Bowman Dairy Co. v. U.S.*, 341 U.S. 214 (1951) (internal citations omitted).

Fed.R.Crim.P. 16 governs discovery.  This rule allows a criminal defendant to seek documents and objects.  The rule states, in relevant part that

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers,

7

>documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>(i) the item is material to preparing the defense;
>(ii) the government intends to use the item in its case-in-chief at trial; or
>(iii) the item was obtained from or belongs to the defendant.

Once a request has been made pursuant to Rule 16 and it becomes clear that the Government does not have the documents or objects sought in its possession, a criminal defendant may wish to seek documents or objects from a third party via subpoena.

At the hearing on this issue, Llanez-Garcia's counsel indicated that she had not first sought the specific documents or objects requested in the subpoena from the Government. This should have been the first avenue to obtaining the requested information. Counsel should be advised that this request should be specific enough to justify any future belief that the information is not within the control of the Government. The Government pointed out at the hearing and the record reflects that, although there were proceedings before this Court where all counsel were present, Defense Counsel never requested the information sought from the Government, nor did she request the Court's aid in obtaining the allegedly necessary documents or objects.

In the instant case, Llanez-Garcia made a very general request. Such a request does not satisfy the requirement that the request be specific enough so that the Government would know exactly what Llanez-Garcia was seeking so that it could inform Llanez-Garcia that it did not have the item in question or could not reasonably obtain the item.

A subpoena is only appropriate if the following showing can be made:

>(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial

8

>without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' *U.S. v. Nixon*, 418 U.S. 683, 699

Without first requesting the specific items from the Government, Llanez-Garcia could not reasonably believe that he could not otherwise procure the items sought. Moreover, counsel may not make overly broad, general requests in an effort to claim compliance with discovery obligations. In order for the Government to meaningfully respond to a request, it must be placed on notice of the full scope of such a request with specificity. The use of a subpoena is not intended nor should be a substitute for a good faith effort to avail himself of discovery from the Government. While the Court recognizes that Defense Counsel has a duty to zealously represent her client, this representation must be within the bounds of the Rules. The Court believes that by misusing the subpoena process, Defense Counsel has "unreasonably and vexatiously" multiplied the proceedings in this case. 28 U.S.C. §1927.

B. Date and Time

The subpoenas at issue contained a date and time for Bammer and Morgan to appear before the Court. This date was entirely fabricated. Defense Counsel explained that the subpoenas were issued on a form issued by the Administrative Office to the United States Courts. This form, Form AO89, is the only criminal subpoena form on the website. The Form does not distinguish between a subpoena to testify, pursuant to Rule 17(a) and a subpoena duces tecum pursuant to Rule 17(c). Because of this, Defense Counsel indicated that she felt she had to fill out the entire Form, regardless of the fact that she was not requesting Bammer and Morgan's testimony at a date and time at the Court.

While the Court recognizes that there is not a separate form that does not include a date and time, it cannot ignore the fact that an individual that received this subpoena would justifiably believe that he was required to appear in front of the Court. This is an inexcusable usurpation of the Court's power to control its own docket. There is nothing to suggest that these inapplicable blank spaces must be filled in to facilitate issuance of the subpoena. Further, the fact that blank spaces exist certainly does not justify representing that a hearing date exists when in fact none has even been contemplated. Defense Counsel could have crossed out the inapplicable section of the Form or consulted the Court.

By including a date in time on the subpoenas when Defense Counsel knew there was not a hearing scheduled by this Court, Defense Counsel has committed a serious misrepresentation that this Court does not take lightly. The Court views Defense Counsel's actions as inexcusable and as a flagrant disregard for the power of the subpoena. "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party[.]" *United States v. Metropolitan Health Corporation*, 2005 WL 3434830 (Dec. 13, 2005), quoting *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946).

    C.   *Court Approval*

The Government further contends that a Rule 17(c) subpoena compelling compliance *prior* to a hearing must be approved and ordered by the Court. Defense Counsel contends that Rule 17(c) does not clearly require court approval before the issuance of a pre-trial subpoena duces tecum. The Court notes that Rule17(b) provides a mechanism for an indigent defendant to obtain approval of a subpoena ex parte so that witness fees may be paid and there is no such similar specific

requirement in Rule 17(c) contemplating ex parte approval for a subpoena duces tecum.

The Court looks to the pertinent language of Rule 17(c)(1) to determine the most logical interpretation. "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed.R.Crim.P. 17(c)(1). The Court would agree that the first sentence of Rule 17(c)(1) does not indicate that Court approval is necessary to order a witness to produce items at a hearing or trial. See *U.S. v. Dyer*, 1:00-cr-0062, Doc. No. 42 (Aug. 29, 2000). However, the next sentence of this section makes it clear that to obtain these items *before* a hearing or trial, as Defense Counsel attempted to do in this case, the Court must review and approve the request so that the *Court* may direct the items to be produced. Id. This section of the Rule gives *the Court,* not counsel, the discretion to direct the witness to produce the items in question *before* trial or *before* they are to be offered into evidence. It would not be logically possible for the Court to exercise this discretion if counsel was not required to first present the subpoena, ex parte, to the Court for approval. Therefore, by simply issuing the subpoena seeking early production of documents, without submitting it first to the Court for approval, Defense Counsel has stripped this Court of its discretionary power afforded by Rule 17(c).

The Court, as indicated at the hearing, has grave concerns with Defense Counsel's use of the subpoena. The Court is concerned about the potential, repeated, abuse of the subpoena process and therefore, as repeatedly mentioned, has put forth a Standing Order regarding this issue.

### III. Protective Order

To the extent that the Government moves for a protective order to keep this from occurring in

the future, the Undersigned has issued a Standing Order to ensure that the misuse of the subpoena process no longer occurs. With such an express directive the Court concludes that a protective order in this case is not necessary.

### IV. Conclusion

For the reasons stated herein, the Government's motion to quash is DISMISSED as moot. The Government's motion for a protective order is DENIED. The Court contemplates a hearing that will encompass argument regarding; 1) Defense Counsel's use of a subpoena to secure items prior to seeking them in discovery 2) Defense Counsel's fabrication of a date and time for Mr. Bammer to appear before the Court, and 3) Defense Counsel's utter disregard for the implicit requirement of Crim.R. 17(c) that the Court must approve and order early-production subpoenas. The Court will address these matters at a hearing on October 14, 2011 at 1:30 p.m.

IT IS SO ORDERED.

September 13, 2011  /s/ John R. Adams
Date  Judge John R. Adams
  United States District Court