UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:11-cr-00177 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| GABRIEL LLANEZ-GARCIA | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

On November 14, 2011, this Court held a hearing regarding whether sanctions were appropriate against Attorney Debra Migdal for misuse of the subpoena power. Prior to this hearing, the Court issued an Order setting forth the specific parameters of this hearing in accordance with Ms. Migdal's due process rights. Doc. 43. After careful review of the relevant law, this Court's prior Orders, and the hearing on this issue, the Court concludes that sanctions are warranted against Attorney Migdal.

*Notice*

This Court issued Attorney Migdal notice of the possibility of sanctions on September 13, 2011. While not the focus of this order, the Court must address the argument that the notice was somehow improper.

At the November hearing on the issue of sanctions, Attorney Migdal's counsel argued that the Court had violated Ms. Migdal's rights to due process with its September 13, 2011 Order. Counsel stated that at the end of the Court's hearing in July regarding the motions to quash, the motion to dismiss and the motion to suppress the Court indicated that it would rule on the three

1

outstanding motions. Counsel particularly noted that the Government had withdrawn its motion for sanctions. Counsel stated that "Ms. Migdal, respectfully, was not on notice that Your Honor was going to make factual findings on the sanctions issue because a show cause order had not issued from Your Honor." Essentially, Counsel argued that the Court's September 13, 2011 Order amounted to factual findings and thus violated Attorney Migdal's due process right to be heard on the issue. The Court expressed its incredulity with this argument, stating that "That's why we're here today, counsel. She's had my prior order; we've had a prior hearing. She has had complete specific notice about my concerns about the matter. That's why we are here." Nov. 4, 2011 Transcript, pg. 15 (Doc. 93).

The Court's September 13, 2011 Order was clear that it would consider the issue of sanctions sua sponte. Specifically, the Court explained that "In light of the Government's withdrawal of its sanctions argument the Court will hold a hearing on the issue of sanctions to allow Defense Counsel the opportunity to respond to the actions that the *Court* finds sanctionable, as further outlined below." Doc. 43. The Court then fully set forth the law it believed was applicable to the subpoena issue in an effort to provide Attorney Migdal with the specific concerns of the Court and allow her to respond to these concerns in accordance with due process. At the conclusion of the Court's Order, the Court stated again that "The Court contemplates a hearing that will encompass argument regarding; 1) Defense Counsel's use of a subpoena to secure items prior to seeking them in discovery 2) Defense Counsel's fabrication of a date and time for Mr. Bammer to appear before the Court, and 3) Defense Counsel's utter disregard for the implicit requirement of Crim.R. 17(c) that the Court must approve and order early-production subpoenas." Doc. 43.

It is unclear what more the Court could have done to afford Attorney Migdal *more* notice and the opportunity to be heard on these very specific issues. In fact, Attorney Migdal's counsel did not provide an argument as to what he believed the Court should have done instead. The Court readily acknowledges that Attorney Migdal was entitled to notice and an opportunity to defend the claims against her. However, her additional assertions that the specificity of this Court's notice offended due process flies in the face of the law surrounding sanctions.

> As we have noted, before a court may impose sanctions *sua sponte*, it must give the offending party notice of its intent to do so and the opportunity to be heard. This is true whether the court is sanctioning a party pursuant to its authority under Rule 11, section 1927, or its inherent authority. Providing such notice and a hearing prevents misunderstandings between the offending party and the sanctioning judge, provides an orderly manner and calm forum in which each party has had time to prepare adequately, and certainly aids our review on appeal. A general notice that the court is contemplating sanctions is insufficient; rather, *the offending party must be on notice of the specific conduct for which she is potentially subject to sanctions*.

*Johnson v. Cherry*, 422 F.3d 540, 551-52 (6th Cir. 2005) (citations and quotations omitted; emphasis added). Attorney Migdal appears to take issue with the Court's terminology in its notice that included the following: "to allow Defense Counsel the opportunity to respond to the actions that the Court finds sanctionable[.]" Doc. 43 at 6. Attorney Migdal appears to contend that the Court made a formal finding at that point and that any hearing thereafter was meaningless. However, it is clear from the Court's order and the subsequent hearing that the Court merely found the *alleged* conduct to be worthy of sanctions. It made no factual findings of any kind, nor did it issue any formal ruling on sanctions. Instead, the Court quite clearly stated that **no** resolution of the issue would occur until after a full and complete hearing.

The Court was also clear that after the hearing and after further considering the issue it would "issue a written opinion at the appropriate time and set forth our ruling." Trans. pg. 37.

3

The Court then continued on, allowing Attorney Migdal as much time as she desired to defend her actions.  "So it's clear, is there anything else that the respondent or Ms. Migdal wishes to present? I've spelled out in an order in detail the specific areas of concern I have with regard to sanctions. And so this is the date and time.  It's now 11:10, and I've set aside the entire day.  Anything else?"  Trans. pg. 37.  At that time, the parties had nothing more to present, and the Court again noted that "We will take the matter under advisement and issue a written order and opinion."  Id. As such, the Court rejects any contention that Attorney Migdal's process rights were violated and any suggestion that the Court had made formal findings *prior* to the hearing.  The instant Order alone serves as the Court's final conclusions on this issue.

*Analysis*

*The Power to Sanction*

"Sanctions are not appropriate unless an attorney is shown to have acted in bad faith, with improper motive, or with reckless disregard of duty owed to the court, and decision to award attorney fees thereunder is committed to court's discretion."  *Bidasaria v. Central Michigan University*, 2012 WL 488889, *10 (E.D.Mich. Feb.15, 2012) (citations omitted).  This section does not require a showing of subjective bad faith, but "[m]ere negligence or inadvertence … will not support a § 1927 sanction."  *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id*. (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

"Moreover, it is well settled that courts have inherent authority to impose sanctions on an

4

attorney for reckless or bad faith conduct during the course of litigation." *United States v. Wheeler*, 154 F.Supp. 2d 1075, 1078 (E.D.Mich. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 (1980); *United States v. Wallace,* 964 F.2d 1214. 1217-18 (D.C.Cir. 1992)).

> It has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers,* 501 U.S. at 43 (internal citations and quotations omitted.)

Among these inherent powers is the power to punish. *Id.* at 44. "This power reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (citations omitted)). Thus, the Court may invoke its inherent power upon a finding of bad faith. *Roadway Express*, *Inc. v. Piper*, 447 U.S. 752, 767 (1980). The Court concludes the Attorney Migdal's conduct in issuing the subpoenas in this case is sanctionable under both its inherent authority and §1927.

Initially, the Court notes that, although a full day was set aside for a hearing on this issue, Attorney Migdal did not present any new arguments to justify the actions of which that the Court

5

previously expressed its grave concerns. Instead the arguments and evidence presented at the hearing centered on the assertion that this is conduct in which the entire public defender's office engages and because *everyone* engages in this misconduct, Attorney Migdal could not have possibly engaged in the behavior in bad faith. The Court rejects this argument summarily. The mere fact that multiple individuals may be engaging in conduct that abuses the Court's subpoena power and fraudulently misrepresents the Court's schedule cannot serve as a *defense* to sanctions.[1] If anything, it only demonstrates a stronger need for sanctions in order to deter such alleged widespread misconduct. The Court will now turn to the specific areas of concern as set forth in the September 13, 2011 Order and as discussed at the November hearing.

### *Misusing the Discovery Process*

The United States Supreme Court has "recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *U.S. v. Nixon*, 418 U.S. 683, 698-99, citing *Bowman Dairy Co. v. U.S.*, 341 U.S. 214 (1951) (internal citations omitted). Moreover, there is no genuine dispute that discovery should begin with a request to the Government. Only after the defendant requests the necessary items from the Government and it becomes clear that the Government does not have the requested items may the defendant seek to obtain the items from a third party via subpoena.

Attorney Migdal violated this straightforward rule without justification and further

---

[1] The fact that one Assistant Public Defender, Ed Bryan, continued to engage in this conduct after it was expressly disapproved of by another Judge of this bench in a case in which Attorney Bryan was counsel only reinforces the need for a sanction herein. *See United States v. Dyer*, N.D. Ohio Case No. 1:00CR62.

6

admitted that she routinely engages in such misconduct.  There is no doubt in the Court's view that Attorney Migdal's attempt to obtain discovery information via a subpoena without first requesting the information from the Government in accordance with Rule 16 is a usurpation of the Court's subpoena power.  Moreover, Attorney Migdal concedes that she did not resort to the use of subpoena after exhausting other *proper* avenues of discovery.  Instead, she jumped to this step without making *any other effort* to obtain the discovery.

      Notably, at the July hearing on the motion to quash the subpoenas, the Court specifically asked Attorney Migdal if she asked the Government for the items she sought in the subpoenas at issue.  She explained that she did not "and I typically don't."  July 14, 2011 Trans. pg. 21.  She then explained that, even if the U.S. attorney had the best of intentions to obtain documents, in her experience, third parties would not respond as well to an informal request by the prosecutor as it would to a subpoena request.  "This is why I cannot rely on the U.S. Attorney who may have the best of intentions, why I go directly to the source."  These statements highlight that Attorney Migdal made a conscious decision to engage in a process not set forth in law, but rather a process that Attorney Migdal alone found to be in the best interests of her client.

      Further, given the admission that this conduct was routinely engaged in by Attorney Migdal, the Court must note its coercive effect.  There is little doubt that Attorney Migdal's statement that a subpoena is more effective than an informal request is accurate.  However, the subpoena is more effective because it carries the weight of the Court with it once an attorney represents that a hearing has been scheduled.  When a recipient is faced with simply providing documents or personally appearing before a federal judge, the coercive effect of the subpoena cannot be overstated.  The fact that Attorney Migdal routinely relied upon the coercive nature of

this type of subpoena is particularly troubling to the Court.

By deliberately failing to follow the proscribed discovery process, Attorney Migdal's actions cannot be described as anything less than intentional acts performed in bad faith. Clearly, Attorney Migdal issued the subpoenas at issue in an attempt to circumvent the discovery process described by Rule 16. Attorney Migdal's unilaterally held belief that her process is more effective than the Rules of Criminal Procedure is not a justification for abandoning those binding rules. Moreover, her candid admission that she *routinely* abandons these rules only serves to increase the need for a sanction herein.

Finally, the Court would be remiss if it did not note that this misconduct resulted in voluminous briefing and two hearings; therefore, at a minimum, the Court concludes that this conduct was unreasonable and vexatious and multiplied the proceedings in violation of § 1927. As such, the conduct warrants sanctions under both the Court's inherent authority and under § 1927.

### *False Statements to a Third Party*

Ohio Rule of Professional Conduct 4.1 provides: "In the course of representing a client a lawyer shall not *knowingly* … make a false statement of material fact or law to a third person[.]" This basic tenet – candor to the Court and third parties – is found in every code of professional conduct. Attorney Migdal's own admissions herein demonstrate that she violated it.

There is no dispute that Attorney Migdal unilaterally issued a subpoena that falsely informed the recipient that a court hearing had been scheduled when no such hearing was even requested, let alone scheduled by the Court. At the July hearing, the Court heard testimony from Bradley Shaver, Special Agent with the Border Patrol. July 14 Tran. pgs. 45-49. He testified that

he picked up a fax from the machine that was to the attention of Mr. Bammer, who was in charge of the station.  As he glanced at the fax, he noticed that his name was handwritten in the body of the document.  He made a copy of the document and passed it along to his boss.  He noted that it was dated and came from the Public Defender's Office.  He testified that he believed that there was a hearing on the date on the subpoena, June 3, 2011.  He further testified that he believed the document required him to appear and give testimony as well as provide documents.  Finally, he testified that he believed that the Undersigned would be presiding at a hearing on June 3, 2011, at the time as stated on the subpoena, 9:00 am.

Attorney Migdal did not attack Shaver's testimony in any manner.  Attorney Migdal's counsel instead focused on the argument that "Ms. Migdal happens to be ensnared in something that is a more common practice.  And that is the real point, Your Honor.  Not that she didn't do something that Your Honor thinks is inappropriate and Your Honor's corrected with Your Honor's standing order."  Trans. pg. 25.  Accordingly, the undisputed facts related to this issue demonstrate that:   1) a subpoena was issued, 2) the subpoena indicated the existence of a formal hearing before the Court, 3) a recipient of the subpoena believed such a hearing would take place, and 4) no such hearing was even requested by Attorney Migdal, let alone scheduled by the Court.  In fact, the Court had no prior knowledge that these false representations were being made by Attorney Migdal.

Time and again, Attorney Migdal has represented that she had the purest motives – zealous representation of her client.  There is no question that such zealous representation is required of every competent defense attorney.  However, zealous representation is not boundless. Zealous representation does not grant an attorney authority to ignore the rules of criminal procedure.  It

9

does not grant license to make misrepresentations or play fast and loose with the Court's schedule. In short, our system is not one that endorses a "win at all costs" theory, nor does it countenance an approach where the ends (a full-fledged defense) justify the means (abusing the subpoena power *and* misrepresenting facts to third parties). Rather, one must zealously represent *within the bounds of the law*. Those bounds were far exceeded when subpoenas were issued that contained false information – information that Attorney Migdal knew to be false. The Court cannot turn a blind eye to that fact and must issue a sanction to discourage any future conduct that one Attorney Migdal may seek to justify under the guise zealous representation.

*Conclusion*

Having concluded above that Attorney Migdal engaged in conduct that warrants a sanction, the Court must also analyze the type of sanction that should issue. The Court recognizes that any form of monetary sanction would effectively result in little more than money being shifted from one government entity to another. Instead, the Court will allow this order to serve as a PUBLIC REPRIMAND of Attorney Migdal. Moreover, given the affidavits filed in this matter that strongly suggest several assistant public defenders have engaged in the same conduct, Attorney Migdal is instructed to provide a copy of this order to Federal Public Defender Dennis Terez for dissemination to his assistant public defenders.

IT IS SO ORDERED.

May 3, 2012 /s/ *John R. Adams*
Date  Judge John R. Adams
  United States District Court

10